FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Nov 21, 2025

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| SHINE H.,[1] | No. 2:25-CV-00117-MKD |
| Plaintiff, | ORDER AFFIRMING DECISION OF THE COMMISSIONER |
| v. | **ECF Nos. 8, 10** |
| FRANK BISIGNANO, COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

Before the Court are the parties' briefs. ECF Nos. 8, 10. David Lybbert represents Plaintiff. Special Assistant United States Attorney Benjamin Groebner represents Defendant. The Court, having reviewed the administrative record and the parties' briefing, is fully informed. For the reasons discussed below, the Court affirms the Commissioner's decision.

---

[1] To protect the privacy of plaintiffs in social security cases, the Court identifies them by only their first names and the initial of their last names. *See* LCivR 5.2(c).

ORDER - 1

## JURISDICTION

On January 9, 2018, Plaintiff applied for Title XVI supplemental security income benefits, later amending his alleged disability onset date to January 9, 2018. Tr. 91, 198-207, 304. The application was denied initially and on reconsideration. Tr. 123-26, 130-32. Plaintiff appeared before an administrative law judge (ALJ) on October 2, 2019. Tr. 48-90. On November 19, 2019, the ALJ denied Plaintiff's claim. Tr. 25-47. This Court subsequently remanded the matter on July 27, 2021. Tr. 1166-68. The ALJ held a second hearing on May 4, 2023, Tr. 1116-1134, and issued an unfavorable decision on May 19, 2023, Tr. 1080-1109. The Appeals Council declined to assume jurisdiction on March 14, 2025. Tr. 877-84. The ALJ's decision following this Court's prior remand thus became the Commissioner's final decision for purposes of judicial review. 20 C.F.R. § 416.1484. Plaintiff appealed this final decision on April 10, 2025. ECF No. 1. The Court has jurisdiction over this case pursuant to 42 U.S.C. § 1383(c)(3).

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012) (citations omitted). "Substantial evidence" means "relevant

ORDER - 2

evidence [that] a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1159 (quotation marks and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation marks and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001), *as amended on reh'g* (Aug. 9, 2001). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012), *superseded on other grounds by* 20 C.F.R. §§ 404.1502(a), 416.902(a) (citation omitted). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id.* (citation omitted). An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115 (quotation marks and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

ORDER - 3

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. § 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. § 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. § 416.920(a)(4)(ii). If the claimant suffers from

ORDER - 4

"any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. § 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. *Id.*

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. § 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. § 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. § 416.920(a)(4)(iv). If the claimant is

ORDER - 5

capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience. *Id.* If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(g)(1). If the claimant is not capable of adjusting to other work, the analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. *Id.*

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

ORDER - 6

**ALJ'S FINDINGS**

At step one of the sequential evaluation process, the ALJ found Plaintiff has not engaged in substantial gainful activity since January 9, 2018, the amended alleged onset date.  Tr. 1087.

At step two, the ALJ found that Plaintiff has the following severe impairments: polysubstance use disorder; affective disorder; anxiety disorder (including obsessive compulsive disorder); post-traumatic stress disorder (PTSD); attention-deficit/hyperactivity disorder (ADHD); liver disease; and back and neck strain.  Tr. 1087.

At step three, the ALJ found that, including the substance use, the severity of Plaintiff's mental impairment meets the severity of a listed impairment.  Tr. 1088. The ALJ found that if Plaintiff stopped the substance use, the remaining limitations would cause more than a minimal impact on Plaintiff's ability to perform basic work activities; therefore, Plaintiff would have a severe impairment or combination of impairments.  Tr. 1090.  However, the ALJ further found that if Plaintiff stopped the substance use, Plaintiff would not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. Tr. 1090.

The ALJ then concluded that, if Plaintiff stopped the substance use, Plaintiff has the RFC to perform medium work with the following limitations:

ORDER - 7

> [H]e could frequently stoop and climb ladders, ropes, and scaffolds; he could not have concentrated exposure to hazards such as moving machinery and heights; he could understand, remember, and perform only simple, routine, repetitive tasks; he could have no contact with the public and only occasional, superficial contact with coworkers, which means no teamwork.

Tr. 1092.

At step four, the ALJ found Plaintiff has no past relevant work. Tr. 1101. At step five, the ALJ found that, if Plaintiff stopped the substance use, and considering Plaintiff's age, education, work experience, RFC, and testimony from the vocational expert, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, to include laundry worker; cleaner, industrial; and laborer. Tr. 1101. The ALJ found that Plaintiff's substance use disorder is a contributing factor material to the determination of disability because Plaintiff would not be disabled if he stopped the substance use. Tr. 1102. Therefore, the ALJ concluded that Plaintiff has not been disabled within the meaning of the Social Security Act at any time from the amended alleged onset date through the date of the decision. Tr. 1102.

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying him supplemental security income benefits under Title XVI of the Social Security Act. Plaintiff raises the following issues for review:

1. Whether the ALJ properly assed the medical opinion evidence;

ORDER - 8

2. Whether the ALJ properly assessed Plaintiff's testimony;

3. Whether the ALJ reasonably considered the materiality of Plaintiff's substance use; and

4. Whether the ALJ erred at step five.[2]

ECF No. 8 at 8-9.

## DISCUSSION

### A. Medical Opinion Evidence

For claims filed on or after March 27, 2017, new regulations apply that change the framework for how an ALJ must evaluate medical opinion evidence. *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 2017 WL 168819, 82 Fed. Reg. 5844-01 (Jan. 18, 2017); 20 C.F.R. §§ 404.1520c, 416.920c. The new regulations provide that the ALJ will no longer "give any specific evidentiary weight . . . to any medical opinion(s) . . . ." *Revisions to Rules*, 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68; *see also* 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, an ALJ must consider and evaluate the persuasiveness of all

_____

[2] Although Plaintiff characterizes this assignment of error as "failing to conduct an adequate step four analysis," ECF No. 8 at 9, Plaintiff's Opening Brief only argues that the ALJ "committed legal error in relying on the vocational expert's response to an incomplete hypothetical," *id.* at 23, which pertains to step five.

ORDER - 9

medical opinions or prior administrative medical findings from medical sources. 20 C.F.R. §§ 404.1520c(a)-(b), 416.920c(a)-(b).

The factors for evaluating the persuasiveness of medical opinions and prior administrative medical findings include supportability, consistency, relationship with the claimant (including length of the treatment, frequency of examinations, purpose of the treatment, extent of the treatment, and the existence of an examination), specialization, and "other factors that tend to support or contradict a medical opinion or prior administrative medical finding" (including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements"). 20 C.F.R. §§ 404.1520c(c)(1)-(5), 416.920c(c)(1)-(5). Supportability and consistency are the most important factors, and therefore the ALJ is required to explain how both factors were considered. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). Supportability and consistency are explained in the regulations:

> *Supportability.* The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.

> *Consistency.* The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical

ORDER - 10

sources in the claim, the more persuasive the medical
opinion(s) or prior administrative medical finding(s) will
be.

20 C.F.R. §§ 404.1520c(c)(1)-(2), 416.920c(c)(1)-(2) (emphases added). The ALJ

may, but is not required to, explain how the other factors were considered. 20

C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). However, when two or more medical

opinions or prior administrative findings "about the same issue are both equally

well-supported . . . and consistent with the record . . . but are not exactly the same,"

the ALJ is required to explain how "the other most persuasive factors in paragraphs

(c)(3) through (c)(5)" were considered. 20 C.F.R. §§ 404.1520c(b)(3),

416.920c(b)(3).

The Ninth Circuit addressed the issue of whether the changes to the

regulations displace the longstanding case law requiring an ALJ to provide specific

and legitimate reasons to reject an examining provider's opinion. *Woods v.

Kijakazi*, 32 F.4th 785, 787 (9th Cir. 2022). The Court held that the new

regulations eliminate any hierarchy of medical opinions, and the specific and

legitimate standard no longer applies. *Id.* The Court reasoned the "relationship

factors" remain relevant under the new regulations, and thus the ALJ can still

consider the length and purpose of the treatment relationship, the frequency of

examinations, the kinds and extent of examinations that the medical source has

performed or ordered from specialists, and whether the medical source has

ORDER - 11

examined the claimant or merely reviewed the claimant's records. *Id.* at 792.

However, the ALJ is not required to make specific findings regarding the

relationship factors. *Id.* Even under the new regulations, an ALJ must provide an

explanation supported by substantial evidence when rejecting an examining or

treating doctor's opinion as unsupported or inconsistent. *Id.*

Plaintiff argues the ALJ improperly assessed Dr. Genthe's opinions.[3] ECF

No. 8 at 14-18. Dr. Genthe examined Plaintiff four times, on March 1, 2018, April

8, 2019, January 6, 2020, and February 13, 2023. Tr. 320, 451, 1318, 1352. Each

time, Dr. Genthe opined, among other things, Plaintiff had a series of severe or

_____

[3] Plaintiff also argues, without elaboration, that "[n]ot addressed at all are the

opinions of Dr. Koehler and Dr. Comrie, who offered opinions based upon recent

formal psychological evaluations by Dr. Genthe." ECF No. 8 at 15. To the extent

Plaintiff contends the ALJ erred by discounting these opinions, Plaintiff falls far

short of meeting his burden to show the ALJ harmfully erred. *See Indep. Towers

of Washington v. Washington*, 350 F.3d 925, 930 (9th Cir. 2003) ("Our adversarial

system relies on the advocates to inform the discussion and raise the issues to the

court. …We require contentions to be accompanied by reasons."); *Carmickle v.

Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 n.2 (9th Cir. 2008) (declining to

address issues not argued with any specificity).

ORDER - 12

marked functional impairments.  Tr. 324-25, 454, 1322, 1355-56.  The ALJ found these opinions "not persuasive."  Tr. 1098.

The ALJ offered numerous reasons to discount the opinions, at least two of which the Court finds persuasive.  First, the ALJ discounted the opinions as internally inconsistent, noting that "in contrast to [Dr. Genthe's] opinion of 'severely impaired' ability to understand, remember, and carry out short, simple instructions in March 2018, his own exam at that time showed [Plaintiff] to be able to accurately repeat 4/4 words, including after a five-minute delay and to be able to follow a three-step instruction"; "[i]n contrast to Dr. Genthe's opinion in March 2018 of poor ability to get along with coworkers and/or peers, his own exam showed [Plaintiff] to present as generally open, cooperative, and friendly, despite having a very anxious affect"; and "in contrast to Dr. Genthe's opinions in April 2019, January 2020, and February 2023 of marked limitation in maintaining appropriate behavior in a work setting, his own exams showed [Plaintiff] to present as generally open, cooperative, and friendly despite appearing nervous or very anxious during two exams."  Tr. 1098-99 (internal citations omitted).  An ALJ may discount a doctor's opinions when they are inconsistent with or unsupported by the doctor's own clinical findings.  *See Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008).  Substantial evidence supports the ALJ's finding.  *See* Tr. 323-24, 456, 1323-24, 1357.

ORDER - 13

Second, the ALJ found that "although Dr. Genthe opined that the effects on basic work activities were not primarily the result of a substance use disorder, [Plaintiff] was not forthright regarding his history of drug use with Dr. Genthe." Tr. 1099. In support, the ALJ noted:

> [Plaintiff] told Dr. Genthe he had used opioids for one year approximately four years before the March 2018 evaluation. This is inconsistent with his later report to treating providers that he was using heroin daily for 20 years … During the April 2019 evaluation, [Plaintiff] told Dr. Genthe he had not used opioids in two years and did not mention any use of methamphetamines, which is inconsistent with his reported use of methamphetamine two months earlier. In the January 2020 evaluation, the only substance use reported by [Plaintiff] to Dr. Genthe was marijuana use 1-4 times a month. In the February 2023 evaluation, he reported using marijuana just once in a while. He reported last using heroin over a year prior, and using it for only about six months. He did not mention a history of methamphetamine or other drug use. However, as noted above, [Plaintiff] had previously (in July 2018) reported a 20-year history of daily heroin use. Later, in 2018 and 2019, he reported also using methamphetamine, which he did not disclose during the January 2020 or February 2023 evaluations by Dr. Genthe. In January 2022 (less than a year before the February 2023 evaluation by Dr. Genthe), he reported using all kinds of drugs in the past couple years, including heroin, meth, acid, mushrooms, and wet.

Tr. 1099 (internal citations omitted). The ALJ reasoned that "[t]his evidence seriously undermines the reliability and value of Dr. Genthe's assessments and evaluations as [Plaintiff] was depicting himself inaccurately with inflated limitations." Tr. 1099. Plaintiff, who bears the burden of showing the ALJ harmfully erred, *see Ludwig v. Astrue*, 681 F.3d 1047, 1054 (9th Cir. 2012) (citation omitted), notably does not challenge this stated ground for discounting the

ORDER - 14

1  opinions and no error is apparent to the Court.  The Court thus declines to disturb

2  the ALJ's finding.

3       Because the ALJ gave at least two valid reasons for discounting these

4  opinions, the Court need not address the balance of the ALJ's stated reasons for

5  discounting them.  Any inclusion of erroneous reasons was inconsequential and

6  therefore harmless.  *See Carmickle*, 533 F.3d at 1162.

7       **B. Plaintiff's Testimony**

8       Plaintiff faults the ALJ for failing to rely on reasons that were clear and

9  convincing in discrediting her symptom claims.  ECF No. 8 at 18-23.  An ALJ

10  engages in a two-step analysis to determine whether to discount a claimant's

11  testimony regarding subjective symptoms.  SSR 16-3p, 2016 WL 1119029, at *2

12  (Mar. 16, 2016).  "First, the ALJ must determine whether there is objective

13  medical evidence of an underlying impairment which could reasonably be

14  expected to produce the pain or other symptoms alleged."  *Molina*, 674 F.3d at

15  1112 (quotation marks and citation omitted).  "The claimant is not required to

16  show that [the claimant's] impairment could reasonably be expected to cause the

17  severity of the symptom [the claimant] has alleged; [the claimant] need only show

18  that it could reasonably have caused some degree of the symptom."  *Vasquez v.*

19  *Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (quotation marks and citation omitted).

20

ORDER - 15

1       Second, "[i]f the claimant meets the first test and there is no evidence of

2  malingering, the ALJ can only reject the claimant's testimony about the severity of

3  the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the

4  rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citation and

5  footnote omitted).  General findings are insufficient; rather, the ALJ must identify

6  what symptom claims are being discounted and what evidence undermines these

7  claims. *Id.* (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995), *as*

8  *amended* (Apr. 9, 1996)); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002)

9  (requiring the ALJ to sufficiently explain why it discounted claimant's symptom

10  claims).  "The clear and convincing [evidence] standard is the most demanding

11  required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th

12  Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th

13  Cir. 2002)).

14       Factors to be considered in evaluating the intensity, persistence, and limiting

15  effects of a claimant's symptoms include: (1) daily activities; (2) the location,

16  duration, frequency, and intensity of pain or other symptoms; (3) factors that

17  precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and

18  side effects of any medication an individual takes or has taken to alleviate pain or

19  other symptoms; (5) treatment, other than medication, an individual receives or has

20  received for relief of pain or other symptoms; (6) any measures other than

ORDER - 16

1    treatment an individual uses or has used to relieve pain or other symptoms; and (7)

2    any other factors concerning an individual's functional limitations and restrictions

3    due to pain or other symptoms.  SSR 16-3p, 2016 WL 1119029, at *7; 20 C.F.R. §

4    416.929(c).  The ALJ is instructed to "consider all of the evidence in an

5    individual's record," to "determine how symptoms limit ability to perform work-

6    related activities."  SSR 16-3p, 2016 WL 1119029, at *2.

7         The ALJ found that Plaintiff's medically determinable impairments could

8    reasonably be expected to cause some of the alleged symptoms, but that Plaintiff's

9    statements concerning the intensity, persistence, and limiting effects of her

10   symptoms were not entirely consistent with the evidence.  Tr. 1215.

11        The ALJ offered numerous reasons to discount Plaintiff's testimony, at least

12   three of which the Court finds well supported.  Among other reasons, the ALJ

13   found "there are significant inconsistencies in the claimant's reports of drug use

14   throughout the relevant period."  Tr. 1093.  The ALJ noted much of the same

15   evidence described above in the context of Dr. Genthe's opinions.  Tr. 1093.

16   Plaintiff, who bears the burden of showing the ALJ harmfully erred, *see Ludwig*,

17   681 F.3d at 1054 (citation omitted), does not challenge this stated ground and no

18   error is apparent to the Court.  *See Freeman v. Saul*, 785 F. App'x 388 (9th Cir.

19   2019) (ALJ validly discounted plaintiff's testimony where plaintiff "lied to the

20   ALJ and her medical providers about her illegal drug use") (citing *Thomas*, 278

ORDER - 17

F.3d at 959); *cf. Verduzco v. Apfel*, 188 F.3d, 1087, 1090 (9th Cir. 1999) (affirming ALJ's discounting of plaintiff's testimony where plaintiff's "various statements regarding his drinking were not consistent"). The ALJ thus validly discounted Plaintiff's testimony on this ground.

Next, the ALJ discounted Plaintiff's testimony as inconsistent with Plaintiff's work history during the relevant period. Tr. 1094. In support, the ALJ noted Plaintiff reported, among other things, "he had been working in Oregon," "he was going out of town again to a pig farm to work for a week," "he was staying busy working 'different jobs,'" and "he was 'busy working 7 days a week.'" Tr. 1094 (internal citations omitted). Plaintiff, who bears the burden of showing the ALJ harmfully erred, *see Ludwig*, 681 F.3d at 1054 (citation omitted), does not challenge this stated ground and no error is apparent to Court. *See, e.g.*, *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009) (approving ALJ's rejection of plaintiff's symptom testimony in part because plaintiff sought work during period of alleged disability). The ALJ thus validly discounted Plaintiff's testimony on this ground.

Finally, the ALJ discounted Plaintiff's testimony as inconsistent with Plaintiff not engaging in "meaningful treatment" since "January 2022, during which there is no documented substance use." Tr. 1096. The ALJ noted that Plaintiff testified "he has health insurance and is able to get whatever treatment he

ORDER - 18

feels he needs." Tr. 1096. The ALJ thus reasoned that Plaintiff's lack of treatment during this period "suggests he is not as troubled by his symptoms as he alleges." Tr. 1096. Plaintiff, who bears the burden of showing the ALJ harmfully erred, *see Ludwig*, 681 F.3d at 1054 (citation omitted), does not challenge this stated ground and no error is apparent to the Court. *See Tommasetti*, 533 F.3d at 1039 (an ALJ may properly rely on "unexplained or inadequately explained failure to seek treatment" in discounting subjective symptom testimony) (quotations and citation omitted); *cf. Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007) ("evidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment.") (quoting *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995)). The ALJ thus validly discounted Plaintiff's testimony as inconsistent with Plaintiff's lack of treatment during the relevant period.

Because the ALJ gave at least three valid reasons for discounting Plaintiff's testimony, the Court need not address the balance of the ALJ's stated reasons for discounting Plaintiff's testimony. Any inclusion of erroneous reasons was inconsequential and therefore harmless. *See Carmickle*, 533 F.3d at 1162.

**C. Materiality of Substance Use**

At step three, the ALJ found that, including the substance use, the severity of Plaintiff's mental impairment meet the severity of a listed impairment. The ALJ then assessed whether Plaintiff would still be found disabled if he stopped the

substance use and concluded he would not be.  Tr. 1090-92.  This was proper.  *See Bustamante v. Massanari*, 262 F.3d 949, 955 (9th Cir. 2001).

Plaintiff contends the ALJ erred by failing to properly assess certain medical evidence.  ECF No. 8 at 12-14.  In support, Plaintiff argues for an alternative interpretation of certain medical opinion evidence.  *Id.*  However, "[w]here the evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld."  *Morgan v. Comm'r of Social Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999) (citing *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995)).  Further, as noted above, Plaintiff failed to show the ALJ harmfully discounted any medical opinion.  Plaintiff, who bears of the burden of proving that substance use "was not a contributing factor material to his disability," *Parra*, 481 at 747-48, has thus failed to show the ALJ erred by concluding otherwise.

**D. Step Five**

Plaintiff argues "the ALJ committed legal error in relying on the vocational expert's response to an incomplete hypothetical."  ECF No. 8 at 23.  This argument is foreclosed because, as discussed above, the ALJ properly evaluated the medical evidence and reasonably discounted Plaintiff's testimony.  This restatement of Plaintiff's argument fails to establish error at step five.  *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175-76 (9th Cir. 2008).

1

2

3                           **CONCLUSION**

4        Having reviewed the record and the ALJ's findings, the Court concludes the

5  ALJ's decision is supported by substantial evidence and free of harmful legal error.

6  Accordingly, **IT IS HEREBY ORDERED**:

7        1. Plaintiff's Brief, **ECF No. 8**, is **DENIED**.

8        2. Defendant's Brief, **ECF No. 10**, is **GRANTED**.

9        3. The Clerk's Office shall enter **JUDGMENT** in favor of Defendant.

10       The District Court Executive is directed to file this Order, provide copies to

11  counsel, and **CLOSE THE FILE**.

12       DATED November 21, 2025.

13                       _s/Mary K. Dimke_
                         MARY K. DIMKE
14              UNITED STATES DISTRICT JUDGE

15

16

17

18

19

20

ORDER - 21